# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| NINA FLECHA, on behalf of herself and others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MEDICREDIT, INC. and<br>FIDELITY AND DEPOSIT<br>COMPANY OF MARYLAND<br><br>　　　　Defendants. | Case No. 1:16-cv-00792-LY |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: March 6, 2018

　　　　　　　　　　　　　　　　*s/ Jacob W. Stahl*
　　　　　　　　　　　　　　　　Jacob W. Stahl
　　　　　　　　　　　　　　　　　　New York Bar No. 4417408*
　　　　　　　　　　　　　　　　　　jwstahl@debevoise.com
　　　　　　　　　　　　　　　　Maura K. Monaghan
　　　　　　　　　　　　　　　　　　New York Bar No. 3042751*
　　　　　　　　　　　　　　　　　　mkmonaghan@debevoise.com
　　　　　　　　　　　　　　　　DEBEVOISE & PLIMPTON LLP
　　　　　　　　　　　　　　　　919 Third Ave.
　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　Telephone: (212) 909-6000

　　　　　　　　　　　　　　　　*Counsel for Defendant Medicredit, Inc.*


　　　　　　　　　　　　　　　　Jamie N. Cotter
　　　　　　　　　　　　　　　　　　Colorado Bar No. 40309
　　　　　　　　　　　　　　　　　　jcotter@spencerfane.com
　　　　　　　　　　　　　　　　SPENCER FANE LLP
　　　　　　　　　　　　　　　　1700 Lincoln Street, Suite 2000
　　　　　　　　　　　　　　　　Denver, Colorado 80203
　　　　　　　　　　　　　　　　Tel: 303.839.3826

Fax: 303.839.3838

Tara Moriarty Kumpf
    Texas Bar No. 24092652
    Tara.kumpf@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas 78701
Tel: 512.344.4700
Fax: 512.344.4701

Shafeeqa W. Giarratani
    Texas Bar No. 24051493
    Shafeeqa.giarratani@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas 78701
Tel: 512.344.4700
Fax: 512.344.4701

*Counsel for Defendants Medicredit, Inc. and Fidelity and Deposit Company of Maryland*

Defendants Medicredit, Inc. and Fidelity and Deposit Company of Maryland (collectively, "Medicredit") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment. Judgment should be entered in favor of Medicredit and against Plaintiff Nina Flecha ("Plaintiff") because there is not a shred of evidence in the record that can substantiate her allegations that the letter that she received from Medicredit (1) contains a threat of litigation (2) that the creditor had no intention or ability to carry out.

Plaintiff alleges that Medicredit's letter to her violated 15 U.S.C. §1692e(5) ("Section 1692e(5)") because Medicredit supposedly threatened litigation if she did not pay her debt, and Medicredit's client, Seton Medical Center Hays ("Seton"), "does not sue consumers for medical debts" and "never intended to sue Plaintiff over her unpaid medical debt." Plaintiff bears the burden of coming forward with evidence to support these allegations – but there is none in the record. To the contrary, the only evidence in the record <u>refutes</u> Plaintiff's allegations. Plaintiff testified that a Seton representative told her that if she neither qualified for charity care nor entered into a payment arrangement, "they can take legal action" and could garnish her wages. There is no reason to doubt Plaintiff's testimony on this point and of course a party cannot create an issue of fact by contradicting her own testimony.

This is not the first time that Plaintiff's counsel has made an unsubstantiated allegation that Seton does not sue to collect on unpaid debts. In August 2017, Judge Ezra granted summary judgment to a debt collector because the plaintiff in that case (represented by the same Plaintiff's counsel) could not substantiate the allegation that Seton does not sue consumers. Here the case for summary judgment is even stronger because Seton expressly told Plaintiff she risked being sued if she did not pay her debt.

Plaintiff's case suffers from a further problem: she cannot establish another element of her claim, namely that Medicredit's letter to her threatened litigation. Plaintiff testified that the letter did not say anything about a lawsuit; in fact, it offered her the opportunity to enter into a voluntary payment plan. Plaintiff's concern about being sued arose not because of the language in the letter, but because of what she was told by Seton. Summary judgment granted should be granted for this reason as well.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff received medical treatment at Seton Medical Center Hays ("Seton") on October 2, 2015, and incurred a debt of $5,166.71. *See* Ex. 1, Letter from Medicredit to Nina Flecha, dated May 29, 2016. Plaintiff was unable to pay that debt. Seton placed the account with Medicredit for collection services. Medicredit attempts to collect unpaid medical debts for Seton through voluntary resolutions, including payment in full and alternative payment arrangements. Ex. 2, Transcript of Deposition of Medicredit Rule 30(b)(6) witness Don Wright, February 27, 2018 ("Wright Dep.") at 30:10-11 ("Medicredit only does voluntary collection programs for Seton."). On May 29, 2016, Medicredit sent Plaintiff a letter (the "Letter"), which stated in pertinent part:

> At this time, a determination must be made with our client as to the disposition of your account. Your failure to cooperate in satisfying this debt indicates voluntary resolution is doubtful. However, if it is now your desire to clear your account, you need to promptly remit the balance in full. To discuss payment arrangements call our office.

*See* Ex. 1. Plaintiff never contacted Medicredit. Instead, on June 27, 2016, Plaintiff filed this lawsuit, alleging that the Letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

Meanwhile, Plaintiff was in contact with Seton regarding payment of the debt. Ex. 3, Transcript of Deposition of Nina Flecha, October 24, 2017 ("Flecha Dep."), at 46:14-18

2

("Q. And so is it your testimony that you called Seton in response to this letter? A. I did call Seton I believe before I received the letter – or maybe when I received the letter . . . ."). Plaintiff attempted to receive debt forgiveness under a charity program from Seton, but ultimately did not qualify for it. *Id.* at 30:21-31:4 ("I had contacted them and . . . I was not approved [for charity] due to the fact there was no donors and that I was going to have to pay my – my – my debt there."). Plaintiff also discussed the possibility of entering into a plan with Seton to pay down the debt. Seton, however, told Plaintiff that she would have to make a down payment in order to qualify for a payment plan. Plaintiff could not afford to make such a down payment. *Id.* at 31:5-11 ("Q. And did you attempt to enter into [an alternative payment plan]? A. I did, but I think they wanted a minimum. I think I had to put so much down as a minimum, and then I had to do payments from there. And at the time I did not have that minimum that they – the lump sum that they wanted.").

During her discussions with Seton, Plaintiff asked what would happen if she could not afford to pay down her debt. A Seton representative told Plaintiff that she might face legal action and garnishment of her wages:

> **[W]hen I did contact the Seton, the discharge, they said that those are the actions they may take up. <u>They can take legal action. And they can – they can, I believe, garnish wages</u>**, she said, if I don't come to an agreement with payment."

Flecha Dep. at 48:17-21 (emphasis added). There is no evidence that Seton did not intend to sue Plaintiff if she did not pay her debt.

Ordinarily, if Plaintiff had not paid the debt or entered into a payment arrangement, Medicredit would have returned the debt to Seton after 180 days. Seton would have decided after that how to proceed. Wright Dep. at 31:1-5 ("Our – our program is, as I said, a voluntary collection program. If – if somebody doesn't want to voluntary – voluntarily pay the debt that is owed, there's nothing else we can do."); 32:12-15 ("And the placement period expiration of

3

approximately 180 days, that account would qualify to be returned back to Seton."). In response to the lawsuit, Plaintiff's account was frozen, collection activities ceased, and the account was not returned to Seton. *Id.* at 31:15-18.

## **ARGUMENT**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party then must come forward with specific facts that establish the existence of a genuine issue for trial. *Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012).

### I. Summary Judgment Should Be Granted Because There Is No Evidence That Seton Does Not Sue Debtors and Did Not Intend to Sue Plaintiff

Plaintiff cannot establish that Medicredit violated Section 1692e(5) because Medicredit did not make a "threat to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff did not even allege that Seton could not sue to collect on her debt. And the record is devoid of evidence that could be used by Plaintiff to satisfy her burden of establishing that Seton does not sue to collect on unpaid debts and did not intend to sue to collect her debt. To the contrary, Plaintiff's own testimony is that Seton advised her that they could and would take legal action if the circumstances warranted it. This is precisely the circumstance where summary judgment should be granted on a Section 1692e(5) claim. *See, e.g., Talamor v. I.C.*

4

*Sys., Inc.*, No. 1:16-cv-0435-DAE, 2017 WL 3712186, at *4-5 (W.D. Tex. Aug. 10, 2017) (discussed below); *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-CV-1497-G(BF), 2010 WL 3791049, at *1 (N.D. Tex. Sept. 27, 2010) (granting summary judgment on Section 1692e(5) claim because the plaintiff "failed to produce evidence to support his allegation that the defendants did not intend to report his debt to a consumer reporting agency"); *Manning v. Elevate Recoveries*, No. 4:16-CV-942-ALM-CAN, 2017 WL 5586674 (E.D. Tex. Oct. 16, 2017) ("Having denied any liability for Plaintiff's [Section 1692e(5)] claim and providing evidence to support its denial, Defendant's Motion has shifted the burden to Plaintiff. Plaintiff's failure to respond and raise an issue of material fact entitles Defendant to summary judgment on this ground."), *report and recommendation adopted sub nom. Manning v. Elevate Recoveries, L.L.C.*, No. 4:16-CV-942, 2017 WL 5569874 (E.D. Tex. Nov. 20, 2017).

The only evidence in the record regarding Seton's debt collection practices is Plaintiff's testimony that Seton <u>did</u> intend to sue her if she did not enter into a payment plan or qualify for charity care.

> Q. Has Seton ever sued you to receive that payment?
> A. Not as of yet, but they said they were going to.
>                                    * * *
> A. But when I did contact the Seton, the discharge, they said that those are the actions they may take up. **They can take legal action. And they can – they can, I believe, garnish wages, she said, if I don't come to an agreement with payment.**

Flecha Dep. at 25:15-18; 48:17-21 (emphasis added).

The record is otherwise silent on Seton's collection practices. Plaintiff did not seek any discovery from Seton. And Medicredit's Rule 30(b)(6) witness testified that he had no knowledge of Seton's decision making regarding whether or not to sue on an uncollected debt.

> Q. [H]as Seton ever sued any of those medical debtors as part of this collection procedure?
>                                    * * *
> A. I have no idea. We don't control -- we don't control what they do.

5

> Q. Okay. Have you ever heard of Seton suing anybody for a medical debt?
>
> * * *
>
> A. Again, I have no idea – I have no idea. That's not part of our program. That's something we wouldn't normally discuss with anyone from Seton.

Wright Dep. at 29:15-30:2.

Indeed, to date, the only basis that Plaintiff has identified for alleging that Seton does not sue to collect on unpaid debts is a misrepresentation to the Court. During the hearing on class certification, Plaintiff's counsel (Robert Zimmer) suggested that Medicredit "conceded" that Seton does not sue consumers in Medicredit's Motion for Judgment on the Pleadings. Medicredt made no such concession. The Motion stated: "assuming that Medicredit's client does not sue consumers for medical debts (which Medicredit does <u>not</u> concede) . . . ." *See* ECF No. 16, at 3. On February 27, 2018, Medicredit asked Mr. Zimmer to correct this misrepresentation as required by Texas Rule of Professional Conduct 3.03(a)(1). *See* Ex. 4, Email from Jacob W. Stahl to Robert Zimmer, dated February 27, 2018. Mr. Zimmer, however, has not even acknowledged Medicredit's request.

This Court granted summary judgment on a nearly identical case brought by Plaintiff's counsel (Celetha Chatman) last year. In that case, the plaintiff similarly alleged that "Seton did not intend to ever sue Plaintiff for the alleged debt because it does not file collection lawsuits against consumers in Travis County, Texas for defaulted medical bills." *Talamor*, 2017 WL 3712186, at *2. Judge Ezra found that Plaintiff had failed to substantiate this allegation:

> Plaintiff has proferred no competent evidence—and the record does not suggest—that [the debt collector's] possibly referral to an attorney was either "legally barred" or never intended to actually be undertaken by Seton. Plaintiff's only "evidence" that Seton does not file lawsuits to collect medical debts is a screenshot of a list of cases filed by Seton as of February 3, 2017, in Travis County, Texas, which does not "undisputedly" show that Seton has never and will never file consumer debt lawsuits in that county.

*Id.* at *5. This case is on all fours with *Talamor*: the same plaintiff's counsel has failed to substantiate the same allegation based on the same statute. Indeed, here Plaintiff's case is even

weaker because Plaintiff has testified that Seton expressly threatened to sue her if she did not pay her debt. Plaintiff's case should therefore be dismissed.[1]

## II. Summary Judgment Should Be Granted Because the Record Contradicts Plaintiff's Claim that an Unsophisticated Consumer Would Interpret Medicredit's Letter as a Threat to Sue

There is a second, independent, reason that summary judgment should be granted. To prevail on her Section 1692e(5) claim, Plaintiff bears the burden of establishing that an unsophisticated consumer would interpret the Letter as a threat that Seton would sue if she did not pay her debt. *Talamor*, 2017 WL 3712186, at *5 ("[N]o 'real possibility' of legal action can be inferred from either the ICS letter or the Schlee letter, particularly in the absence of any summary judgment evidence offered by Plaintiff besides the two collection letters at issue and a self-serving affidavit."). Plaintiff claims that the use of the term "voluntary resolution" somehow threatens an "involuntary resolution," *i.e.*, a lawsuit (even though the term "involuntary resolution," lawsuit or even lawyer appears nowhere in the Letter). The record is devoid of evidence supporting her allegation.

Plaintiff relies on case law that arose when law firms that are acting as debt collectors – and not in a legal capacity – send letters on law firm letterhead containing threats of litigation that they had not been hired by the creditor to carry out. *Canlas v. Eskanos & Adler, P.C.*, No. C 05-00375 JF, 2005 WL 1630014, at *2 (N.D. Cal. July 6, 2005) (letter from an attorney); *Ikonomidis v. Duggins Law Firm, PLC*, No. CIV.A. 13-5872, 2014 WL 3497246, at *1 (E.D. La. July 14, 2014) (allegations that "the letter was written on counsel's letterhead and referred to the

---

[1] Arguably, Plaintiff's counsel had an obligation to bring this adverse authority to the Court's attention when this precise issue was raised at the class certification hearing on February 13, 2018. *See* Tex. R. Prof. Conduct 3.03(a)(4) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]").

creditor as a plaintiff in a new case"); *Robertson v. Richard J. Boudreau & Assocs., LLC*, No. C09-1681 BZ, 2009 WL 5108479 (N. D. Cal. Dec. 18, 2009). As set forth below, these cases are inapposite.

In evaluating whether the letter conveys a legal threat, the key considerations are (1) "whether the threat to bring suit to collect the debt is one made by the debt collector himself, or whether the language merely suggests that the debt collector's client may consider pursuing legal action in the event of nonpayment" and (2) "whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action." *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 348 (E.D.N.Y. 2009) (collecting cases) (cited approvingly in paragraph 29 of the Complaint).[2] Medicredit argued in its Motion for Judgment on the Pleadings that the Letter offers a recipient an opportunity to pay the account or enter into an alternative payment arrangement. The Court found that the question of how an unsophisticated consumer would interpret the Letter is an issue of fact. *See* Report and Recommendation, ECF No. 34, at 4 (Apr. 10, 2017) (citing *Carter v. First Nat'l Collection Bureau, Inc.*, 135 F. Supp. 3d 565, 569 (S.D. Tex. 2015)), *adopted by* Order, ECF No. 50 (May 26, 2017). Since that time, Plaintiff has failed to develop any factual evidence that supports her position. To the contrary, Plaintiff has herself testified that the Letter does not threaten litigation; she was afraid of being sued because of what Seton representatives told her.

The only evidence in the record regarding how an unsophisticated consumer would interpret the Letter is (1) the Letter itself, and (2) Plaintiff's own testimony.

---

[2] The third prong of the *Leone* test, "the defendant's ability and intent to carry out the threatened conduct," is inapplicable here because Medicredit did not threaten legal action.

8

Nothing in the Letter suggests that legal action would result from non-payment by Plaintiff. The Letter refers to the option of "voluntary resolution," which describes payment in full or an alternative payment arrangement. The Letter expresses the view that "voluntary resolution" is "doubtful" in light of Plaintiff's past failure to pay, but then communicates that a voluntary resolution is still possible and that Plaintiff could contact Medicredit. The Letter is neither on law firm letterhead nor does it mention a law firm. The Letter does not use any terminology related to legal action or litigation, such as "court," "lawsuit" or "garnishment." The Letter does not even set a deadline for action by Plaintiff nor does it suggest any further steps other than a decision about the disposition of Plaintiff's account. Therefore, nothing in the text of the Letter supports Plaintiff's allegation that the Letter threatens legal action.

Plaintiff's testimony is fully consistent with Medicredit's position that the Letter does not threaten legal action. Her testimony confirms that Plaintiff believed that she could be sued because of what she was told by Seton – not because of the text of Medicredit's letter.

Plaintiff understood that the Letter did not threaten her with litigation:

> Q. What is it that you're testifying says that there will be legal actions?
> A. As – I don't know, as far as suing, garnishing wages, any legal actions against me.
> Q. **But where do you see the words 'legal actions' in the May 29th letter?**
> A. **I never did, ma'am.** I – when I spoke with Seton Medical Center discharge, that's what the representative told me at that time.

Flecha Dep. at 49:21-50:4 (emphasis added).

Instead, Plaintiff testified that the Letter offered an opportunity to enter into an alternative payment arrangement:

> Q. So you would agree that if you or another patient had the means to make a lump sum and enter into a payment plan, that is something that this letter would permit?
> A. Yes.
> Q. And if you had the money to make the lump sum, would you have entered into such a payment arrangement?
> A. Yes, ma'am, I would have.

> Q. And was it your understanding that if you entered into some kind of voluntary arrangement like that, Seton would not sue you?
> A. Yes, ma'am. But I had to make that initial payment and I didn't have that initial down payment.

Flecha Dep. at 51:20-52:7. An alternative payment arrangement does not involve litigation. According to Plaintiff's own testimony, a consumer who could enter into an alternative payment arrangement would not interpret the Letter in the manner alleged in the Complaint. Therefore, Plaintiff has admitted she cannot establish liability for those members of the putative class that Plaintiff seeks to represent.

Plaintiff was concerned about the possibility of litigation only because of her conversations with Seton, and read the Letter with those conversations in mind.

> Q. [Y]ou read the letter having in your mind that you had these conversations with representatives of the medical center?
> A. Yes. Yes.
> Q. And that informed your interpretation of the letter?
> A. Yes, ma'am.

Flecha Dep. at 49:3-9.

Plaintiff's claim fails under *Leone*. Under the first prong of the *Leone* test, Plaintiff's testimony that her concern about being sued arose because of what she was told by Seton precludes her from establishing that "the threat to bring suit to collect the debt is one made by" Medicredit alone. 257 F.R.D. at 348. Under the second prong of the *Leone* test, Plaintiff's testimony that the letter actually conveyed an offer to enter into a "<u>voluntary</u> arrangement" to resolve her debt confirms that the Letter at most "simply describes available alternatives which include possible legal action." 257 F.R.D. at 348. Because there is no evidence in the record supporting Plaintiff's allegation that the Letter threatens litigation, summary judgment must be granted for this reason as well.

In fact, Plaintiff's testimony taken as a whole firmly establishes that the Letter is not misleading. Plaintiff's conversations with Seton representatives dovetail with the Letter exactly. The Letter offers a "voluntary resolution." The Seton representative discussed options with Plaintiff for a voluntary resolution of the debt, such as an alternative payment arrangement. Flecha Dep. at 29:23-30:5 ("Well, as my understanding, when you get the discharge – when I was asking questions and they were giving me other options, they told me as – they would not sue as long as I, like, come to some type of agreement with them and stuff like that or if I was to make small payments."). The Letter states a determination would be made *with Seton* regarding the disposition of Plaintiff's account. Plaintiff testified that the Seton representatives told her that *Seton* would decide what to do if she failed to pay her debt. Flecha Dep. at 25:15-18; 48:17-21 ("But when I did contact the Seton, the discharge, they said that those are the actions they may take up. They can take legal action. And they can – they can, I believe, garnish wages, she said, if I don't come to an agreement with payment."). Plaintiff cannot establish there is anything misleading about the Letter.

There is nothing in the record that would support finding that an unsophisticated consumer would read the Letter as threatening legal action. The unsophisticated consumer standard does not require the Court to ignore that the record contains only evidence supporting Medicredit's interpretation of the Letter. *See Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) ("[T]he unsophisticated consumer is not one tied to the very last rung on the intelligence or sophistication ladder." (citation and quotation omitted)); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) ("[T]he standard . . . prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with

care."); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (Courts have been "careful not to conflate lack of sophistication with unreasonableness"). No genuine issue of material fact remains regarding an unsophisticated consumer's interpretation of the Letter.

## **CONCLUSION**

For the foregoing reasons, Medicredit respectfully requests that the Court grant summary judgment in their favor on Plaintiff's claim.

Dated: March 6, 2018

*s/ Jacob W. Stahl*
Jacob W. Stahl
   New York Bar No. 4417408*
   jwstahl@debevoise.com
Maura K. Monaghan
   New York Bar No. 3042751*
   mkmonaghan@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Ave.
New York, NY 10022
Telephone: (212) 909-6000

*Counsel for Defendant Medicredit, Inc.*

Jamie N. Cotter
   Colorado Bar No. 40309
   jcotter@spencerfane.com
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Tel: 303.839.3826
Fax: 303.839.3838

Tara Moriarty Kumpf
   Texas Bar No. 24092652
   Tara.kumpf@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas 78701
Tel: 512.344.4700
Fax: 512.344.4701

Shafeeqa W. Giarratani
   Texas Bar No. 24051493

Shafeeqa.giarratani@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas 78701
Tel: 512.344.4700
Fax: 512.344.4701

*Counsel for Defendants Medicredit, Inc. and Fidelity and Deposit Company of Maryland*

**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the above pleading was served via the Court's CM/ECF system on the following counsel, this 6th day of March, 2018:

Michael Wood
Celetha Chatman
Community Lawyers Group, Ltd.
University Park
3300 N. Interstate Hwy 35, Ste. 7018, 7th Fl.
Austin, TX 78722
Ph: (512)524-9352
Fx: (512)593-5976
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Robert Alan Zimmer , Jr.
Zimmer & Associates
707 West 10th Street
Austin, TX 78701
512-434-0306
Fax: 310-943-6954
Email: zimmerlawtx@gmail.com

                 *s/ Jacob W. Stahl*